## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BARBARA K.,**[1]

      **Plaintiff,**

                                 **Case No. 2:21-cv-17303**
      **v.**                                    **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Barbara K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

      On May 23, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since October 23, 2015. R. 111, 128, 213–19. The application was denied initially and upon reconsideration. R.  Plaintiff sought a *de novo* hearing before an administrative law judge

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

("ALJ"). R. 129–33, 135–37. ALJ Scott Tirrell held a hearing on July 14, 2020, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–94. In a

decision dated October 14, 2020, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from October 23, 2015, Plaintiff's alleged disability onset

date, through the date of that decision. R. 16–34. That decision became the final decision of the

Acting Commissioner of Social Security when the Appeals Council declined review on July 23,

2021, R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

April 13, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 20.[3] On that same day, the case was reassigned to the undersigned. ECF No. 21. The matter

is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1, 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on October 23, 2015, her alleged disability onset date. R. 33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 18–19. She met the insured status requirements of the Social Security Act through December 31, 2021. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical degenerative disc disease, with radiculopathy; lumbar degenerative disc disease; degenerative joint disease of the right shoulder, with bone spur and calcific tendinitis, status post-surgery; degenerative joint disease of the left shoulder; degenerative joint disease of the right knee, with meniscal tears, status post-surgery; degenerative joint disease of the left knee; and obesity. R. 19. The ALJ also found that Plaintiff's diagnosed hypertension, cardiac impairment, type II diabetes mellitus, hyperlipidemia, asthma, vitamin D deficiency, urinary tract infection, rash, dermatitis, gastritis, cellulitis of the right leg, hepatic steatosis with hepatomegaly, thoracic degenerative disc disease, degenerative disc disease of the hips bilaterally, avulsion fracture of the right fifth proximal phalanx, and right foot calcaneal spurs, as well as her alleged impairments of anxiety and alcohol abuse were not severe impairments. R. 19–20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 21–33. The ALJ also found that this RFC did not permit the

performance of Plaintiff's past relevant work as a tractor-trailer truck driver, bus driver, and child-care attendant. R. 32–33.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a survey worker, an information clerk, and a fund raiser II—existed in the national economy and could be performed by Plaintiff. R. 33–34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 23, 2015, her alleged disability onset date, through the date of the decision. R. 34.

Plaintiff apparently seeks a remand based on "additional evidence" and appears to disagree with the ALJ's findings at step five of the sequential evaluation. She asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

## IV.    SUMMARY OF RELEVANT MEDICAL AND VOCATIONAL EVIDENCE

### A.    Ellen Rader Smith, M.A., O.T.R., C.P.E.

On July 3, 2019, Ellen Rader Smith, M.A., O.T.R., C.P.E., prepared a report entitled "Functional Capacity Evaluation." R. 991–1011 ("Functional Capacity Evaluation"). Ms. Rader Smith explained that she conducted an evaluation of Plaintiff on May 23, 2019, for "the purpose of being able to assess her current functional capacities, following an October 18, [2015] work-related trip and fall accident[.]" R. 991. Ms. Rader Smith reported examination findings of, *inter alia*, diffuse tightness throughout the right upper trapezius region; tender to palpation over the

cervical and lumbar spines; reduced and painful lumbar spine mobility for lateral bending to each side; mild limitations in cervical spine mobility; reduced shoulder mobility bilaterally but normal all other upper extremity mobility; significant guarding for pain with attempts at spinal and shoulder passive range of motion; weakness in the shoulders and elbows with right arm strength of 4-/5 and left arm strength of 4/5; limited knee mobility; full non-dominant left hand grip strength and mildly reduced right hand grip strength; and full hand function for the performance of manipulative tasks. R. 1004–06. Ms. Rader Smith also noted, *inter alia*, that Plaintiff was unable to sit comfortably for the approximate 1.5-hour interview; she performed sit to stand transfers slowly with reliance on the left arm; she was able to stand for only 10-15-minute periods before resuming a seated position; and she walked with an antalgic gait. R. 1006–07.

Following her physical examination, Ms. Rader Smith concluded as follows:

> [Plaintiff] is a 52-year old woman who sustained shoulder, knee, back and neck injuries in an October 2015 workplace accident. [Plaintiff] (09/16) had right knee surgery that involved partial medial and lateral meniscectomies to repair torn medial and later meniscus tears; and right shoulder surgery (02/17) that involved rotator cuff repair, acromioplasty, distal clavicle excision, glenohumeral joint debridement as related to cuff and labral tears, impingement, and AC arthritis. [Plaintiff] attended physical therapy following both surgeries. Dr. Ropiak (01/18) noted worsening of [Plaintiff's] right shoulder and bilateral knee pain, right knees swelling and giving way, difficulty walking, standing and negotiating stairs; and stated that her bilateral knee and shoulder injuries were causally related to her 10/15 accident. Dr. Bercik's (08/17, 02/18) impressions included post-cervical sprain, right shoulder rotator cuff tear and left shoulder sprain, left wrist sprain, right knee medial and lateral meniscal tears, and left knee sprain, causally related to [Plaintiff's] 10/15 workplace accident; and felt that she was at maximum medical improvement for all her injuries and could resume all regular daily home and work activities without restriction.
>
> This Functional Capacity Evaluation finds that 3.5-years post-accident, [Plaintiff] has:
>
> • Persistent moderate-severe bilateral knee, R>L, right shoulder, back and neck pain that increase with movement and weightbearing
> • Diffuse tightness in the right upper trapezius region
> • Diffuse right knee swelling and tenderness to palpation

• Mild limitations in cervical spine mobility with pain and dizziness
• Diminished lumbar spine mobility with forward flexion reduced 55% and lateral bending 30%
• Mild-moderate limitations in left shoulder mobility and moderate-severe limitations in right shoulder mobility, with forward flexion limited to 95° and lateral to 45°
• Restricted knee mobility, R > L, with right knee flexion limited to 75° and extension -10°, with an overall 55% reduction in her total arc of motion
• Mildly reduced dominant right hand grip strength and full left hand grip
• Diffuse upper extremity muscle weakness, R > L
• Full isolated hand function to perform manipulative tasks with performance limitations related to inability to freely reach with the right hand, e,g, with need to keep upper arm close to side, forearm supported, and use of compensatory trunk postures to facilitate reach
• Increased right arm pain in conjunction with brief reaching and slower performance times relative to the left
• Inability to remain comfortably seated for 1.5 hours, keeping the right leg extended and intermittently shifting from side to side, with one brief standing break
• Inability to stand > 10-15 minutes at once, and using high counter and/or the wall for support
• Very slow ambulation with an antalgic gait, leaning on the wall intermittently for support, and primary weightbearing on the left leg
• Slow stair negotiation with non-reciprocal foot placement and support
• Inability to kneel and very limited abilities to squat
• Inability to do low level bilateral lifts from ground level, but able to do occasional reaches using only the left upper extremity to lift about 5 pounds loads located 18 inches off the floor
• Occasional abilities to perform maximal medium level bilateral lifts of 10 pounds to mid chest level and 4.5 pounds to shoulder level
• Inability to do bilateral carries, but able to briefly carry 10-pounds with only the left arm
• Increased bilateral knee, neck/upper back and low back pains following minimally exertional activity

Based upon this the results of this Functional Capacity Evaluation where it is felt that [Plaintiff] demonstrated a consistent and best effort despite her pervasive pain, this Occupational Therapist and Vocational Evaluator finds that [Plaintiff] has ongoing severe functional deficits related to the knees, right shoulder, and low back that restrict her mobility for bending and reaching, and her abilities to weight bear on the right knee for more than brief stand or walk. [Plaintiff] is able to attend to most of her own personal care activities and do very limited driving, and depends on family for nearly all homemaking. [Plaintiff's] current physical demand level is at the below Sedentary level, as she cannot sit comfortably for sustained periods, work repeatedly with the dominant right hand/arm even when upward reaching is not required, and her very limited ability to do lifts/carries of 10 pounds or less with reliance on the left arm and with inability to bend for low level lifts.

10

> At the time of [Plaintiff's] October 2015 accident, she was employed as a
> Longshoreman, with most of her work related to driving a van to transport other
> longshore workers between the ship and parking lot, sometimes driving the cars
> herself to their parking spaces, working on the dock to remove and add shoes to the
> containers, or drive and hook-up the hustler to pick up containers. Based upon the
> results of this FCE, [Plaintiff] is unable to resume her work as a
> Longshoreman/Stevedore or perform this work that is associated with medium
> physical demands. [Plaintiff] is also unable to resume her prior work that includes
> truck and bus driving, loading and unloading luggage on/off cruise ships. I
> respectfully disagree with Dr. Bercik's impression that [Plaintiff] can resume all
> regular daily home and work activities without restriction. This 52-year old woman
> has no sedentary work experience, a limited education (no high school degree or
> GED), and no computer skills; and no transferable work skills that she could utilize
> while seated. Within a reasonable degree of occupational therapy and vocational
> certainty, I feel that [Plaintiff] *remains unable to resume work and is unemployable*
> based upon her ongoing pain and residual functional capacity, and that her inability
> to function in the same way that she could prior to her 2015 accident also negative
> [sic] impacts her overall quality of life.

R. 1009–1011 (emphasis added).

### B.    Christopher Ropiak, M.D.

In a letter addressed to Plaintiff's counsel and dated November 4, 2019, Christopher

Ropiak, M.D., Plaintiff's treating physician, advised that he had first treated Plaintiff on

November 23, 2015, for evaluation of injuries suffered in October 2015. R. 96–98 ("November

2019 letter"). Plaintiff presented for follow-up appointments on July 15, 2016, and January 29,

2018, and Dr. Ropiak summarized the January 2018 follow-up appointment as follows:

> I had seen her for follow up on January 29, 2018. At that visit, she still reported
> pain to her bilateral shoulders and her bilateral knees. Numerous times in the past I
> had asked for additional diagnostic studies on the injured body parts, and had
> continued with work restrictions for those injured body parts, but ultimately an FCE
> [Functional Capacity Evaluation] was requested and then performed [by Ms. Rader
> Smith] on May 23, 2019. Conclusion of that report included severe functional
> deficits related to both knees, the right shoulder and low back. Her current physical
> command was below sedentary level.

R. 96–97. Dr. Ropiak last evaluated Plaintiff on October 31, 2019, and reported as follows:

> My last evaluation of the patient occurred on October 31, 2019. She had continued

complaints of neck and low back pain, left worse than right shoulder pain, right worse than left knee pain. She denied any new injuries subsequent to my last evaluation of her. She did report that she had suffered from a stroke approximately two months ago, but she had recovered from that. She reported that she was using ibuprofen for pain. She denied any injuries to the above mentioned body parts since the last time I had seen her, however she did report that her right foot has pain, and she is in a hard soled shoe and pending further evaluation by a foot specialist.

On my physical examination on October 31, 2019, she had diminished range of motion and pain in her bilateral shoulders, worse symptoms in her right compared to her left. Her bilateral knees had diminished range of motion and pain, more severely affected in her right knee compared to her left knee.

Her diagnosis from the injuries sustained in October of 2015 include bilateral shoulder injuries with a right shoulder rotator cuff tear, bilateral knee injuries with right knee medial and lateral meniscus tears.

At this point of her evaluation, I would also include her diagnosis to be posttraumatic arthopathy of her bilateral knees and shoulders as a result of the work injury. She has additional diagnoses to her cervical spine, but that is out of the scope of my practice, and Dr. Sutain can comment on that.

R. 97. Dr. Ropiak concluded that Plaintiff's "above mentioned injuries do have permanency that

has been quantified in the functional capacity evaluation." R. 98.

###    C.    Daniel Wolstein, Ph.D.

In a letter dated August 20, 2020, and directed to Plaintiff's counsel, Daniel Wolstein,

Ph.D., a certified rehabilitation counselor, advised that, pursuant to counsel's request, he had

reviewed Ms. Rader Smith's functional capacity evaluation "along with the seven occupational

titles cited that comport with" Plaintiff's restrictions[.]" R. 1273. Dr. Wolstein quoted in his

report Ms. Rader Smith's findings and conclusions, including, *inter alia*, that Plaintiff "remains

unable to resume work and is unemployable based upon her ongoing pain and residual functional

capacity, and that her inability to function in the same way that she could prior to her 2015

accident also negative [sic] impacts her overall quality of life." R. 1274. Dr. Wolstein explained

that the following "[s]even occupational titles were selected as options for" Plaintiff, but opined

that she ultimately would be unable to perform such occupations:

> Survey Worker (DOT: 205.267-054)
> Information Clerk (DOT 237.367-018)
> Fundraiser DOT (293.357-014)
> Telephone Clerk (DOT 209.567-014)
> Call Out Operator (DOT 237.367-014)
> Credit Card Interviewer (DOT 205.367-014)
> Surveillance System Monitor (DOB: 379.367010)

> In my professional opinion, and within a reasonable degree of vocational certainty, these occupations would not be viable vocational options for [Plaintiff] for several reasons.

> It is my understanding that [Plaintiff] has typically performed manual labor occupations, including as a Longshoreman, in truck and bus driving, and in loading and unloading luggage on/off cruise ships. In performing these occupations, [Plaintiff] has developed transferable skills for manual-labor occupational duties, not sedentary occupational duties.

> [Plaintiff] also presents with the following vocational barriers:

> • She does not have a high school education or GED.
> • She does not have any computer skills.
> • She does not have any sedentary work history.
> • She is 53, which is considered to be approaching an advanced vocational age.
> • She has physical functional limitations as derived from the FCE [functional capacity evaluation] report.
> • Her physical capacity is below the sedentary level.
> • She likely has limited retraining options due to her low level of educational attainment.

R. 1275; *see also* R. 1276 (explaining further why Plaintiff is unable to perform these jobs). Dr.

Wolstein went on to conclude as follows:

> Based on the medical records reviewed for this evaluation, it is within a reasonable degree of vocational certainty that [Plaintiff] would not be a candidate for the occupations cited above, nor any other sedentary occupations. She presents with multiple vocational barriers, as described above, including the inability to perform sedentary work, her approaching an advanced vocational age status, her limited educational attainment (and correspondingly low retraining abilities), her lack of transferable skills at the sedentary level, and an employment history in primarily manual-labor occupations. The occupations cited typically require higher levels of education, and [Plaintiff] would be competing for jobs against her non-injured peers.

I hold these opinions within a reasonable degree of vocational certainty based on the medical records reviewed, specifically the functional capacities evaluation report of Ms. Ellen Rader Smith.

R. 1277.

## V.   DISCUSSION

### A.   Remand Based on "Additional Evidence"

Plaintiff argues that remand is warranted because there is a "reasonable probability" that "additional evidence"—Dr. Ropiak's November 2019 letter—would change the outcome of this case. *Plaintiff's Memorandum of Law*, ECF No. 13, pp. 17–26; *Plaintiff's Reply Brief*, ECF No. 19, pp. 4–5. The Acting Commissioner disagrees, contending that Plaintiff has not established the necessary requirements justifying remand. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, pp. 7–12. The Court concludes that remand on this basis is unwarranted.

It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)."*Id*. at 593; *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that a court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding," *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990), and "not merely cumulative of what is already in the record[,]" *Szubak v. Sec'y of Health*

14

*and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). "To be material, there 'must be a reasonable probability that the new evidence would have changed the outcome' of the Commissioner's decision." *Miller v. Comm'r Soc. Sec.,* 732 F. App'x 162, 165–66 (3d Cir. 2018) (quoting *Beety-Monticelli v. Comm'r of Soc. Sec.,* 343 F. App'x 743, 747 (3d Cir. 2009) and *Szubak*, 745 F.2d at 833). A finding of "good cause" "requires 'some justification for the failure to acquire and present such evidence to the [Commissioner].'" *Szubak*, 745 F.2d at 833 (quoting *Brown v. Schweiker*, 557 F. Supp. 190, 192 (M.D. Fla. 1983)). Finally, "[t]he burden of showing new and material evidence and good cause for delay is on the party seeking review." *Stover v. Comm'r of Soc. Sec.*, No. CV 16-1265, 2017 WL 3190724, at *2 (W.D. Pa. July 27, 2017).

In the case presently before the Court, Dr. Ropiak's November 2019 letter is not "new" because it was in existence and available to Plaintiff nearly one year before the ALJ issued his decision on October 19, 2020. R. 16–34, 96–98; *see also Sullivan*, 496 U.S. at 626. While Plaintiff insists that the November 2019 letter is "new" because it purportedly contains new information that is not cumulative of other record evidence, Plaintiff does not deny that this letter pre-dated the ALJ's decision; in fact, she concedes that this letter "did exist for submission to the ALJ[.]" *See Plaintiff's Memorandum of Law*, ECF No. 13, pp. 17–26; *Plaintiff's Reply Brief*, ECF No. 19, pp. 4–5. Because Dr. Ropiak's November 2019 letter was in existence and available to Plaintiff, it is therefore not "new" evidence within the meaning of Sentence Six of 42 U.S.C. § 405(g). *See Sullivan*, 496 U.S. at 626; *Hill v. Saul*, No. CV 19-990, 2020 WL 6135437, at *5 (W.D. Pa. Oct. 19, 2020) (". . . Plaintiff's counsel acknowledges that said information was available at that time, but that she had just not secured the same. . . . Since the evidence was available, it is not new.") (citations omitted); *Whitefield v. Saul*, No. CV 19-231, 2020 WL 1532342, at *1 (W.D. Pa. Mar. 31, 2020) ("Here, Dr. Neely's records are not 'new' because they

were in existence and could have been obtained by Plaintiff prior to her hearing.") (citing *Sullivan*, 496 U.S. at 626).

Moreover, this letter does not contain "material" evidence. As previously noted, evidence is "material" if there is "a reasonable probability that the new evidence would have changed the outcome of the Commissioner's decision." *Miller,* 732 F. App'x at 165–66 (internal quotation marks and citations omitted). Plaintiff argues that the November 2019 letter is material because it relates to the relevant time period, "speaks to her disabling diagnoses, permanency and future treatment recommendations," adds the "new diagnosis" of posttraumatic arthropathy of Plaintiff's bilateral knees and shoulders, and "affirms Plaintiff's ongoing permanency as quantified in the functional capacity evaluation of Ellen Rader-Smith." *Plaintiff's Memorandum of Law*, ECF No. 13, pp. 20–24; *Plaintiff's Reply Brief*, ECF No. 19, p. 5. None of Plaintiff's proffered reasons persuades the Court that this letter has a reasonable probability of changing the ALJ's decision. While the November 2019 letter relates to the relevant time period, Plaintiff simply points to Dr. Ropiak's "new" diagnosis of posttraumatic arthropathy of Plaintiff's bilateral knees and shoulders without identifying any functional limitations purportedly flowing from that diagnosis. *See id*. Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). To the extent that Plaintiff argues that Dr. Ropiak's opinion regarding the permanency of Plaintiff's impairments establishes that she is disabled, statements that a claimant has an impairment that permanently precludes the

performance of gainful employment is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Jason F. v. Kijakazi*, No. 4:22-CV-626, 2023 WL 6307985, at *15 (M.D. Pa. July 28, 2023), *report and recommendation adopted sub nom. Fetterhoff v. Kijakazi*, No. 4:22-CV-00626, 2023 WL 6305788 (M.D. Pa. Sept. 27, 2023) ("Pursuant to 20 C.F.R. § 404.1520b(c)(3), statements that would direct an ALJ's decision that a claimant is disabled or not disabled are considered 'statements on issues reserved to the Commissioner.' Dr. Tadavarthy's statement on the employability assessment form that Plaintiff has a disability that permanently precludes the performance of gainful employment is such a statement. Pursuant to 20 C.F.R. § 404.1520b(c) this type of statement is 'neither valuable nor persuasive' and an ALJ 'will not provide any analysis about how [he or she] considered such evidence in [the] determination or decision, even under § 404.1520c.'"). Although Plaintiff also contends that the November 2019 letter is material because it affirms or supports Ms. Rader Smith's Functional Capacity Evaluation, the ALJ properly discounted Ms. Rader Smith's evaluation for the reasons discussed in more detail below. Accordingly, Plaintiff has not persuaded this Court that Dr. Ropiak's November 2019 letter has a reasonable probability of changing the outcome of the ALJ's decision. *Miller,* 732 F. App'x at 165–66.

Finally, and in any event, Plaintiff has not shown "good cause" for failing to present this evidence to the ALJ. *Miller,* 732 F. App'x at 165–66. Plaintiff argues that "due to the disarray caused by the COVID-19 pandemic, of which the Plaintiff respectfully requests the Court take judicial notice, the ensuing sudden transition to remote work prior to the July 14, 2020 hearing resulted in the narrative report not having been prepared to submit in advance of the ALJ's

decision." *Plaintiff's Memorandum of Law*, ECF No. 13, p. 24; *see also id*. at 25 (asserting that

"the disarray caused by adapting to remote work during the COVID-19 pandemic was just such

an unusual, unexpected and unavoidable circumstance beyond Plaintiff's control preventing

Plaintiff from submitting otherwise existing and critical evidence earlier than the hearing level

decision in July of 2020") (citing 20 C.F.R. § 404.970(3)(b)). Plaintiff's conclusory argument in

this regard does not explain, however, how the "disarray caused by the COVID-19 pandemic"

prevented her from presenting to the ALJ Dr. Ropiak's November 2019 letter, which was

prepared months before the pandemic's transition to remote work and several more months

before the ALJ issued his decision in October 2020. Notably, and as the Acting Commissioner

points out, Plaintiff's counsel[4] asserted at the July 2020 administrative hearing that the record

was complete, R. 47, and denied that there were any outstanding reports from Plaintiff's other

pending lawsuits, R. 77. Similarly, Plaintiff testified at the hearing that she was not currently

treating with any medical source and that she last saw a treating source in September 2018, R.

75, and she denied any recent telemed appointments, R. 77. Based on this record, the Court

cannot say that Plaintiff has carried her burden of establishing good cause for failing to present

the November 2019 letter to the ALJ. *Cf. Haney v. Comm'r of Soc. Sec*., No. 13-3033, 2014 WL

2916454, at *15 (D.N.J. June 26, 2014) ("In determining whether good cause exists to

supplement the administrative record, courts have recognized that Congress intended this aspect

of § 405(g) to be sparingly applied.").

     For all these reasons, the Court concludes that remand for consideration of Dr. Ropiak's

November 2019 letter would undermine the principles of Section 405(g). *See Matthews*, 239

---

[4] The same counsel represented Plaintiff in the underlying administrative proceedings and in the
current action before this Court.

F.3d at 595 ("If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand.").

      **B.**      **The Durational Requirement and Step Five**

Plaintiff also argues that the ALJ erred in finding her not disabled for any continuous twelve-month period and in failing to properly consider Dr. Wolstein's opinion. *Plaintiff's Memorandum of Law*, ECF No. 13, p. 27–30. Plaintiff specifically contends that the ALJ failed to consider "the last prong" of the definition of disability, or what Plaintiff labels as "the prospective durational requirement," *i.e.*, an inability to perform substantial gainful activity "'by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months.'" [.]" *Id*. (quoting 42 U.S.C. § 416(i)(1)(A) and 20 C.F.R. § 404.1505(a)); *see also Plaintiff's Reply Brief*, ECF No. 19, pp. 5–7. According to Plaintiff, "[t]he prospective durational requirement underscores the Defendant's legal error in failing to give greater weight to the substantial evidence provided in vocational expert Dr. Daniel Wolstein's August 20, 2020 report." *Plaintiff's Memorandum of Law*, ECF No. 13, p. 28 (citations omitted). Plaintiff goes on to argue that, in addition to corroborating Ms. Rader Smith's Functional Capacity Evaluation, Dr. Wolstein's report "also provides his own independent assessment and analysis of the claimant's vocational barriers to representative occupational titles of light work[.]" *Id*. at 28 – 29. Plaintiff contends that the ALJ should have assigned greater weight to this report, and that his failure to do so requires remand. *Id*. at 29–30. Plaintiff's arguments are not well taken.

As previously noted, "[a]n individual is disabled and eligible for Disability Insurance Benefits under the Social Security Act if, 'by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months,' he or she is unable to engage in any substantial gainful activity." *Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105, 107 n.3 (3d Cir. 2016) (quoting 42 U.S.C. § 423(d)(1)(A), and citing, *inter alia*, 20 C.F.R. § 404.1505(a)). An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the Commissioner's regulation eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors

---

[5] As previously noted, Plaintiff's claim was filed on May 23, 2018.

when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the

RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can: occasionally push and pull with the upper extremities bilaterally, with weight limited as with lifting and carrying; perform all postural maneuvers occasionally, except she can never climb ladders, ropes, or scaffolds; and never work at unprotected heights or work with machinery involving exposed mechanical parts. Further, she can frequently reach in all directions bilaterally, except she can only occasionally reach overhead with the dominant upper extremity. She can frequently perform handling. Lastly, the claimant requires the use of a cane with the non-dominant upper extremity for climbing stairs.

R. 21–22. In reaching this determination, the ALJ, *inter alia*, discounted Dr. Wolstein's opinion

as follows:

> The record contains a vocational report that was completed by Daniel Wostein [sic], Ph.D., on August 20, 2020 (Ex. 19F). In that report, it was concluded that the claimant was unemployable based upon her ongoing pain and residual functional capacity (Id.). This assessment is given little weight, because Dr. Wostein [sic] relied solely on the Functional Capacity Evaluation completed by occupational therapist Ellen Rader Smith, OTR, CVE, CPE, on May 23, 2019, which was over one year prior to Dr. Wostein's [sic] opinion (Id.), and which does not reflect the claimant's overall functional capacity for any continuous twelve month period during the period at issue in this claim.

R. 31. The ALJ, in turn, considered Ms. Rader Smith's opinion as follows:

> Although the claimant underwent a Functional Capacity Evaluation on May 23, 2019 (Ex. 12F), that evaluation confirmed that the claimant's specialized treatment only lasted through January of 2018 (Ex. 12F at 6-8). I have considered this evaluation as to the claimant's level of function, namely that the claimant would have limitations for lifting, carrying, sitting, standing, walking, and limitations for use of the right, dominant hand and right upper extremity. The therapist further found that the claimant could only perform work that did not repeatedly require the dominant right hand or arm, even when upward reaching (Ex. 12F at 3, 21). In addition, the therapist concluded that the claimant had only a very limited ability to lift and carry ten pounds or less, with reliance on the left arm and inability to bend for lower level lifts (Id. at 3, 21). I have given this assessment some weight in reaching the above functional capacity finding. However, based upon a review of the entire record, I do not find that such limitations are supported for any continuous period of at least twelve consecutive months during the relevant period. For example, the clinical findings in other exhibits, such as Exhibits 11F, and 13F-19F,

22

discussed herein, are consistent instead with limitation to a range of light exertion, as incorporated into the residual functional capacity finding above.

R. 25.

In addition, the claimant underwent a Functional Capacity Evaluation with Ellen Rader Smith, OTR, CVE, CPE, on July 3, 2019 (Ex. 12F). On examination, the claimant showed diffuse tightness throughout the right upper trapezius region, and tenderness to palpation over the cervical and lumbar spines (Id. at 15). The claimant also showed reduced and painful lumbar spine mobility for lateral bending to each side, reduced shoulder mobility bilaterally, guarding with passive spinal and shoulder range of motion, and limited and painful knee mobility (Id. at 15-16). The claimant was also unable to sit comfortably for the entire one and one-half hour interview, was limited in standing, and walked with antalgic gait (Id. at 17-19).

However, the claimant still showed only mild limitations in cervical spine mobility, full nondominant left hand grip, only mildly reduced right hand grip, only slight bilateral elbow and shoulder weakness, and full hand function to perform manipulative tasks (Ex. 12F at 15-17). The record also shows that the claimant was not participating in any major orthopedic or pain management treatment at the time of this evaluation, and had not participated in such treatment for over one year.

R. 29.

In challenging the ALJ's consideration in this regard, Plaintiff complains that the ALJ failed to consider "the prospective durational requirement[,]" which was purportedly satisfied by the opinion of Ms. Rader Smith and Dr. Wolstein that Plaintiff was unable to resume her past work and was "unemployable." *Plaintiff's Memorandum of Law*, ECF No. 13, p. 27–30 (citing, *inter alia*, R. 1274); *Plaintiff's Reply Brief*, ECF No. 19, pp. 5–7. However, as set forth above, the ALJ explained why he did not find the opinions of Ms. Rader Smith and Dr. Wolstein persuasive. R. 25, 29, 31. Although the ALJ did not expressly use the words "not persuasive" when evaluating Ms. Rader Smith's opinion, the ALJ did explicitly discuss why he did not find that opinion supported by or consistent with the record, including that examiner's own examination findings. R. 25, 29; *see also Jones*, 364 F.3d at 505. For example, the ALJ observed that Ms. Rader Smith's examination revealed, *inter alia*, "only mild limitations in cervical spine

23

mobility, full nondominant left hand grip, only mildly reduced right hand grip, only slight

bilateral elbow and shoulder weakness, and full hand function to perform manipulative tasks[.]"

R. 29. The ALJ further found that other evidence in the record did not support this examiner's

opined functional limitations for any continuous period of at least twelve consecutive months

during the relevant period. R. 25. In so finding, the ALJ referred to other record evidence, which

was discussed in his opinion, that was instead consistent with a limitation to a range of light

exertion. R. 25 (citing Exhibits 11F, 13F–19F); *see also* R. 25 (reflecting, *inter alia*, that in

March 2017, Plaintiff "still showed an ability to lift up to about forty-five degrees, and externally

rotate the shoulder to forty-five degrees"; "showed improved orthopedic examination results by

May of 2017, including improved active forward elevation, abduction, and external rotation of

the right shoulder," and it was noted in that same month that Plaintiff "had significant

improvement in her right shoulder symptoms, including significant relief through physical

therapy treatment"), 26 (noting that Plaintiff "again showed normal gait and normal station" in

October 2017; Plaintiff "acknowledged to her primary care provider on May 28, 2019 that she

had not been taking any medication, despite complaints of a pain and burning sensation in the

feet"; Plaintiff "also reiterated on July 17, 2020 that she had not been taking medications for

more than six months"; and the "record also shows that the claimant had not been seen by her

primary care provider since approximately July 19, 2019, which was one year prior"; following

discharge from a hospitalization in March 2016, Plaintiff was in "stable condition"; an

examination in December 2016 "still showed normal gait and normal station"; Plaintiff

"confirmed on February 6, 2017 that everything except her right shoulder pain was fine"; while

Plaintiff was hospitalized in connection with an episode of right knee pain and lower back pain,

Plaintiff "confirmed that this worsening of pain was only due to the claimant falling from a

24

staircase[,]" and she "still presented herself as ambulatory, and she was still able to bear weight" and "showed no focal neurological deficits, intact sensation, grossly intact cranial nerves, and full muscle strength in all extremities . . . . X-rays also showed no evidence of fracture or acute process, and the claimant was discharged in improved and stable condition"), 27 (noting that while Plaintiff was hospitalized due to complaints of right foot pain and "a near syncopal event[,]" Plaintiff "still presented herself as ambulatory, with no indication of cane use[,]" "an initial examination showed normal gait and normal sensation in all extremities[,]" and "[a]n additional examination further revealed full muscle strength in the upper and lower extremities, despite subjective decreased sensation in the left arm and left leg, with gait leaning into the right leg"; an internal neurological examination performed by non-treating physician James Charles, M.D., in June 2017 revealed, *inter alia*, "normal cervical spine examination and range of motion, negative Lhermitte sign, normal and non-tender thoracic spine, normal and nontender lumbar spine, negative bilateral straight leg raise testing, and normal gait, station, arm swing, base, heel and toe walking, tandem walking, Romberg sign, and deep knee bends . . . . grossly intact cranial nerves, full muscle strength in the bilateral lower extremities and left upper extremity, normal muscle tone, no tremors or fasciculation"), 28 (reflecting Dr. Charles' examination results that included, *inter alia*, normal coordination and reflexes of the upper and lower extremities, and intact sensation in the bilaterally lower extremities and left upper extremity; that "Dr. Charles confirmed that the claimant's examination was non-physiological, and that the claimant's presentation of global pain, numbness, weakness, and tingling of the right upper limb had no organic basis" and that Plaintiff "had either a somatoform disorder or was malingering, and that the claimant showed no evidence of cervical radiculopathy or myelopathy"; independent orthopedic examinations performed by Michael J. Bercik, M.D., on August 14, 2017, and

25

February 26, 2018, "revealed only mild positive findings related to the right shoulder and right knee, and otherwise normal results related to the cervical spine, thoracic spine, lumbar spine, left shoulder, and left knee" and "normal neurological examination results of the upper and lower extremities, including no sensory dysesthesias"; a consultative examination performed by Alexander Hoffman, M.D., on September 4, 2018, revealed some positive physical examination results but also revealed "good results" such as "walking without a cane, no major problems getting onto the table, lack of edema of the lower extremities, normal dorsiflexion and plantar flexion of the toes, and no fluid accumulation or major crepitus of the knees" and "full range of motion of the left shoulder, bilateral wrists, ad bilateral elbows, with right knee flexion only a little less than left knee flexion" as well as "normal bilateral shoulder range of motion during her bilateral shoulder x-rays"), 29 (reflecting, *inter alia*, that while a consultative examination performed by Ruth Robles, M.D., on March 20, 2019, revealed some positive examination results, it also revealed "good results" such as "ability to get on and off the exam table, ability to dress, comfortable appearance in seated position, intact sensation to pinprick and light touch of the upper and lower extremities, full pinch strength and grip strength bilaterally, and full muscle strength of the upper and lower extremities bilaterally" and "an ability to extend her fingers, make a fist, and oppose her thumbs bilaterally" as well as "normal deep tendon reflexes, no significant cervical spasm, normal cervical lordotic curve, and full range of motion of the hips, knees, ankles, and cervical spine" and the ability "to ambulate without the use of a handheld device"), 30 (noting, *inter alia*, "the claimant experienced an improvement some of her shoulder signs and symptoms after her surgery, including an improvement in her right shoulder range of motion. The record also contains no evidence that the claimant required any ongoing or extensive orthopedic or pain management treatment, after

26

approximately January of 2018"; "although the claimant initially used a cane after her knee surgery, the record contains no evidence of the ongoing use of a cane thereafter. However, I have nonetheless incorporated the claimant's use of a cane with the non-dominant upper extremity for climbing stairs in the residual functional capacity defined above, giving the claimant the benefit of the doubt as to an ongoing limited need for the use of a cane in this capacity"). The ALJ also went on to explain the limitations included in the RFC for a limited range of light work as follows:

> Given the totality of circumstances and record, I do not find the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, fully consistent with the clinical evidence. As discussed at length above, the claimant was involved in a work-related accident in October of 2015, at which time she experienced injuries to her cervical spine, lumbar spine, shoulders, and knees.

> However, the record shows that the claimant experienced an improvement in her signs and symptoms through orthopedic treatment and medication management treatment, including right knee surgery and right shoulder surgery. The claimant also otherwise required only conservative physical therapy treatment and treatment with her primary care provider. Moreover, the record shows that the claimant's orthopedic treatment ended in January of 2018, with no evidence of any extensive treatment thereafter. The claimant also subsequently showed a number of good physical examination results during independent medical examinations and internal medicine consultative examinations, despite some positive findings.

> Just as important, the claimant verified that she was able to care for her personal needs and perform a number of household chores (Ex. 11F at 2). Examples included going to the store or office by herself, doing light cleaning, feeding herself, making simple meals by herself, dressing herself, brushing her teeth, taking a shower or bath, putting on her shoes, and taking off her shoes (Id.). In short, the clinical evidence of record does not support the extent of the limitations alleged. These factors are consistent with the residual functional capacity as outlined above and are inconsistent with a finding of disability.

> In sum, the above residual functional capacity assessment is supported by the entire record, including the claimant's testimony to the extent I find the testimony consistent with the longitudinal evidence of record, as well as the claimant's alleged impairments, both severe and non-severe.

R. 31–32. This detailed consideration of the record evidence provides substantial evidence

supporting the ALJ's decision to discount Ms. Rader Smith's opinion. *See* 20 C.F.R.

404.1520c(1), (2); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D.

Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional

limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the

claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial

nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL

4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's

finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was

inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild

radiographic findings); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa.

June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light

of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a

physician's opinion was not persuasive because "the limitations espoused [by the physician]

were not consistent with or supported by other evidence of record" such as, *inter alia*, the

treatment records, for instance, indicated a greater ability to walk, lift, and stand"); *cf. Cosme v.

Comm'r Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021) ("Prior to making his determination

regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's

physical and mental abilities and explained the evidence he relied upon in reaching his decision

and the weight accorded to it. Therefore, there is substantial evidence that the ALJ properly

considered Cosme's physical and mental abilities in a function-by-function assessment prior to

his RFC determination."). *See also Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d

Cir. 2012) (stating that the Court "will uphold the ALJ's decision even if there is contrary

evidence that would justify the opposite conclusion, as long as the 'substantial evidence'
standard is satisfied") (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *Hatton v.
Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the
not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to
resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Significantly, because Dr. Wolstein expressly relied on Ms. Rader Smith's opinion when
he crafted his vocational opinion, R. 1273–77, the ALJ properly discounted Dr. Wolstein's
opinion for the same reasons. *See id*. Moreover, in concluding that Plaintiff was capable of
performing other work in significant numbers in the national economy, the ALJ expressly relied
on the vocational expert provided by the state agency who responded to a hypothetical question
that assumed the RFC ultimately found by the ALJ. R. 33–34, 78–93; *cf. Podedworny*, 745 F.2d
at 218 (stating that a "vocational expert's testimony concerning a claimant's ability to perform
alternative employment may only be considered for purposes of determining disability if the
question accurately portrays the claimant's individual physical and mental impairments"). To the
extent that Dr. Wolstein provided a vocational opinion based on Ms. Rader Smith's RFC that
was different than the RFC ultimately found by the ALJ, the ALJ did not err in discounting that
opinion. *See id*.; *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A
hypothetical question must reflect all of a claimant's impairments that are supported by the
record; otherwise the question is deficient and the expert's answer to it cannot be considered
substantial evidence."); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698 (RBK/KMW), 2019
WL 413539, at *9 (D.N.J. Jan. 31, 2019) ("[T]he ALJ does not have a duty to respond to
Plaintiff's counsel's attempts to expand the hypothetical question. Again, SSR-004P only
focuses on apparent conflicts with the VE's testimony and the DOT listing, not attempted

conflicts with the initial ALJ hypothetical and a newly revised one from Plaintiff's counsel");

*Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) ("'[I]t

would be error to include limitations not credibly established by the record when relying on a

vocational expert's testimony to make a disability determination.'") (quoting *Chiucchi v.*

*Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL

7322788 (D.N.J. Dec. 15, 2016)).

In addition, in discounting the opinions of Dr. Wolstein and Ms. Rader Smith, the ALJ

specifically discussed why the limitations articulated in these opinions were not supported for

any period of twelve continuous months during the relevant period. R. 22–34; *see also* R. 991

(explaining that the "purpose" of the Functional Capacity Evaluation was "to assess her

[Plaintiff's *current* functional abilities") (emphasis added), 992 (finding Plaintiff's "*current*

physical demand level is at the below Sedentary level") (emphasis added), 994 (stating that the

"purpose" of the Functional Capacity Evaluation was "to assess her [Plaintiff's] *current*

functional capacities and limitations") (emphasis added), 1010 (finding Plaintiff's "*current*

physical demand level is at the below Sedentary level") (emphasis added). Although Plaintiff

insists that she satisfied the "prospective durational requirement" because, *inter alia*, these

sources opined that Plaintiff was unemployable, R. 1011, 1274, 1277, and that the ALJ

overlooked such evidence, the ALJ did not commit reversible error in not expressly discussing

such opinions. Instead, the ALJ properly noted that, "[p]ursuant to 20 CFR 404.1520b(c), certain

evidence is inherently neither valuable nor persuasive, including decisions by other

governmental agencies and non-governmental agencies, disability examiner findings, and

statements on issues reserved to the Commissioner of the Social Security Administration. As

such, I have not provided articulation about such evidence." R. 31; *see also Louis v. Comm'r*

*Soc. Sec.*, 808 F. App'x at 118 ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

For all these reasons, the ALJ's findings at steps four and five of the sequential evaluation enjoy substantial support in the record, as does his consideration of the opinions of Ms. Rader Smith and Dr. Wolstein.

## VI.    CONCLUSION

**WHEREUPON**, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  October 11, 2023                          *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE